UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **W&W-AFCO STEEL LLC,** <br> 1730 W Reno <br> Oklahoma City, OK 73106 <br><br> **Plaintiff** <br><br> v. <br><br> **CORMAN KOKOSING CONSTRUCTION CO.** <br> 12001 Guilford Rd, <br> Annapolis Junction, MD, 20701 - 1201 <br><br> Serve: <br> CT CORPORATION SYSTEM <br> 4701 Cox Rd Ste 285 <br> Glen Allen, VA, 23060 – 6808 <br><br> **Defendant.** | Case No.: 3:21CV769 |

## COMPLAINT

Plaintiff W&W-AFCO Steel LLC ("W&W-AFCO"), by and through undersigned counsel, files this Complaint against Defendant and in support thereof states as follows:

### PARTIES

1. Plaintiff W&W-AFCO is a Delaware limited liability company with its principal place of business located at 1730 W Reno, Oklahoma City, OK 73106.

2. W&W-AFCO is registered to do business in the Commonwealth of Virginia.

3. Defendant Corman Kokosing Construction Corporation ("Corman Kokosing") is an Ohio corporation with a principal place of business located at 12001 Guilford Rd, Annapolis Junction, MD, and a place of business located at 4701 Cox Rd, Suite 285, Glen Allen, VA 23060.

4. Corman Kokosing is registered to do business and regularly conducts business in

the Commonwealth of Virginia.

**JURISDICTION AND VENUE**

5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as the Defendant maintains an office in this judicial district and a substantial part of the events or omissions giving rise to this action occurred within this judicial district.

7.  Defendant has, by contract, consented to jurisdiction and venue in this Court.

**FACTS**

**The Purchase Order and Contract Documents**

8.  Upon information and belief, Corman Kokosing entered into a construction contract with the City of Chesapeake, Virginia ("Owner") to supply materials for the replacement and construction of a bridge located at 22nd Street and Associated Roadway at a site in Chesapeake, Virginia ("Project").

9.  Upon information and belief, the Project is subject to the Virginia Public Procurement Act, Section 2.2-4300, *et seq.* of the Code of Virginia.

10. Corman Kokosing retained W&W-AFCO to supply certain steel materials for the Project.

11. More specifically, Corman Kokosing entered into a purchase order with W&W-AFCO, dated January 11, 2019, whereby W&W-AFCO was to supply to the Project site forty-eight (48) 56" curved plate girders, two (2) 96" cross girder segments, intermediate stiffeners,

connection plates cross frames, and other related parts (the "Purchase Order"). A true and correct copy of the Purchase Order is attached hereto as **Exhibit "1."**

12. The Purchase Order incorporated by reference the contract documents between Corman Kokosing and the Project owner, the City of Chesapeake ("Owner"), dated August 20, 2018 (hereinafter, the "Contract Documents"). A true and correct copy of the August 20, 2018 agreement between Corman Kokosing and the Owner provided to W&W-AFCO, which comprises part of the Contract Documents, is attached hereto as **Exhibit "2."** See also Exhibit 1 § 1.

13. The Purchase Order itself also attached an Exhibit "A," which specified the materials that were to be furnished by W&W-AFCO under the Purchase Order. See Exhibit 1 § 2.

14. Pursuant to the Purchase Order, Corman Kokosing agreed to pay W&W-AFCO "each month in the amount equal to 100% of the value of the materials delivered to the site.". See Exhibit 1 § 3.

15. Pursuant to Section 5 of the Purchase Order, W&W-AFCO agreed "to furnish the materials called for under this Purchase Order within the following time or times to wit: **In accordance with and so as not to delay the Project Schedule and as may be further described in Exhibit A**." See Exhibit 1 § 5.

16. The Purchase Order did not define the term "Project Schedule".

17. Exhibit A to the Purchase Order was dated January 7, 2019 contained a list of nine (9) items that the scope of work included, but was not limited to, and item no. 9 read as follows: "Delivery mid-late August 2019." See Exhibit 1 at Ex. A.

3

18. However, despite the typewritten dates on the Purchase Order and its attached Exhibit A from early January 2019 (January 11, 2019 and January 7, 2019, respectively), W&W-AFCO and Corman Kokosing did not sign and execute the Purchase Order until June 7, 2019. See Exhibit 1 at 3.

19. Pursuant to the Contract Documents, Corman Kokosing was required to commence work within ten (10) days after the issuance of the Notice to Proceed and then substantially complete its work within 450 days from the date of the Notice to Proceed and reach final completion of all work within 480 days from the date of the Notice to Proceed. See Exhibit 2 at §III(F).

20. A Notice to Proceed dated January 2, 2019 was issued by the Owner to Corman Kokosing identifying a May 1, 2020 final completion date for all work. A true and correct copy of the Owner's January 2, 2019 Notice to Proceed to Corman Kokosing is attached hereto as **Exhibit "3."**

21. The Owner's Notice to Proceed indicated that liquidated damages in the amount of $600 per day would be assessed by the Owner for failure of Corman Kokosing to substantially complete the work by the date for substantial or final completion as established by the Notice to Proceed. See Exhibit 3.

22. Pursuant to Section 9 of the Purchase Order, W&W-AFCO was required to "obtain and pay for all permits, licenses, tests and official inspections necessary to his performance under this Purchase Order, and shall comply with all laws, ordinances and regulations bearing on the production of his material and the delivery thereof." See Exhibit 1 § 9.

**Delayed Start of W&W-AFCO's Work and Other Impacts to Material Deliveries**

4

23. While Exhibit A to the Purchase Order originally contemplated W&W-AFCO's material deliveries as commencing in "mid-late August 2019," this was based on the Purchase Order being executed at the time drafted in January 2019; however, execution of the Purchase Order was delayed by five (5) months until June 7, 2019 while the parties negotiated its terms.

24. Despite the delays in execution of the Purchase Order, W&W-AFCO endeavored to fabricate the materials and deliver them to the Project as expeditiously as possible.

25. Fulfillment of the materials specified in the Purchase Order required multiple deliveries, some of which required special "super load" hauling permits to be issued by the state of North Carolina and Virginia.

26. W&W-AFCO continued to keep Corman Kokosing apprised of updates concerning the expected delivery timing and schedule for the box girder materials.

27. In response to W&W-AFCO's updated anticipated delivery date information, Corman Kokosing did not indicate that this would result in any impact to the critical path of the Project or that Corman Kokosing was ready to begin installation of the materials to be supplied by W&W-AFCO.

28. Although final fabrication of the girders originally was expected to be completed on July 24, 2019, fabrication ultimately was not completed until a later date.

29. During the fabrication process, W&W-AFCO informed Corman Kokosing that delivery of the girders would more likely be in late September 2019.

30. Corman Kokosing stated in response that the company had no issue with the later delivery date and that "they could work around it."

31. W&W-AFCO continued to keep Corman Kokosing apprised of updates to the expect delivery schedule of the box girder materials.

32. On September 5, 2019, during a jobsite meeting, a W&W-AFCO representative informed Corman Kokosing representatives that delivery would take place on October 14, 2019.

33. At this time, Corman Kokosing had just started to drive piling for the 2nd pier that the box girders would rest upon.

34. Thus, as of September 5, 2019, Corman Kokosing was not close to prepared to install the box girders to be delivered by W&W-AFCO.

35. On September 25, 2019, W&W-AFCO advised Corman Kokosing of an October 28, 2019 load date for both box girders.

36. On October 16, 2019, W&W-AFCO emailed Corman Kokosing to provide notice that Virginia was over a month behind on issuing super load permits necessary to fulfill the deliveries. W&W-AFCO further informed Corman Kokosing that although W&W-AFCO's request for a permit had been timely submitted and already received approval, it would not be issued by Virginia due to the delays.

37. W&W-AFCO stated in that email that "with the mess that [the] Virginia permit office is in we need [to] get your erection schedule immediately."

38. On October 18, 2019, W&W-AFCO followed up to reiterate its request to Corman Kokosing for a delivery schedule.

39. Later that day, Corman Kokosing provided a delivery schedule consisting of a series of deliveries, starting with the delivery of two straddle beams on October 31, 2019, and followed by subsequent plate girder deliveries on November 5, 8, 13, 18, 21, 26 and 27.

40. Despite efforts to expedite the permitting process, and based on the delays of which W&W-AFCO had previously advised Corman Kokosing about, on October 28, 2019,

6

W&W-AFCO was still waiting for super load permits to be issued by the state of Virginia that would permit W&W-AFCO to ship the straddle beams for the box girders.

41. Additionally, as of that date, North Carolina still had not issued a hauling permit required to fulfill delivery of the straddle beams.

42. On October 28, 2019, W&W-AFCO's representative informed Corman Kokosing that they were still waiting for a hauling permit to be issued by the state of North Carolina that would permit W&W-AFCO to ship the straddle beams for the box girders.

43. Notwithstanding the parties' course of conduct of working amicably to develop a realistic delivery schedule in compliance with state shipping laws and regulations, and notwithstanding the fact that Corman Kokosing had previously provided a schedule for initial delivery of the straddle beams to occur on October 31, 2019, on October 29, 2019 at 8:48 a.m., Corman Kokosing sent a notice to W&W-AFCO asserting that, effective October 29 at 7:00 a.m., W&W-AFCO would be held "solely responsible for all cost; direct and indirect, associated with the structural steel delivery delay."

44. In doing so, Corman Kokosing breached, *inter alia*, its duty of good faith and fair dealing implied in the Purchase Order.

45. On October 30, 2019, W&W-AFCO emailed Corman Kokosing to inform it that the North Carolina permit had been issued, which allowed W&W-AFCO to release a portion of the materials, a tub girder. W&W-AFCO said that it would keep Corman Kokosing updated on delivery dates.

46. On November 19, 2019 W&W-AFCO received a revised delivery schedule from Corman Kokosing pushing back the delivery dates, but still showing a completion date of December 16, 2019.

47. Corman Kokosing stated in its November 19, 2019 email transmitting the revised delivery schedule that "[a]s long as we receive the short section of the straddle beam tomorrow (11/20) this schedule can be followed going forward."

48. As of November 19, 2019, all material for the project from W&W-AFCO was fabricated, painted, and ready to be shipped.

49. The following day, November 20, 2019, W&W-AFCO delivered the short box portion of the straddle beam.

50. As of November 20, 2019, W&W-AFCO had all materials ready for delivery, had all necessary hauling permits issued by North Carolina and Virginia, and was ready, willing, and able to make all deliveries.

51. However, once W&W-AFCO obtained the proper permits and stood ready to deliver, Corman Kokosing held any further deliveries from W&W-AFCO and thereby prevented delivery to the job site.On November 26, 2019, W&W-AFCO received a revised schedule pushing several of the delivery dates out several days, but keeping the scheduled November 25 and 26, 2019 and December 2, 2019 delivery dates. The deliveries set for December 3, 4, and 5, 2019 were pushed to December 6, 2019, several intermediate dates were re-scheduled, and the final delivery date was pushed from December 16 to December 19, 2019.

52. The November 25 and 26, 2019 and December 2, 2019 delivery dates were met by W&W-AFCO.

53. On December 3, 2019, Corman Kokosing told W&W-AFCO to "stop the delivery for Friday, December 6" without any indication of what the new delivery date or new schedule would be.

8

54. On December 6, 2019, Corman Kokosing told W&W-AFCO to "hold all deliveries" because Corman Kokosing was "adjusting the schedule now."

55. On December 9, 2019, Corman Kokosing provided yet another revised schedule of deliveries, but said that it was not taking further deliveries until December 16, 2019.

56. The email with the December 9, 2019 schedule acknowledged that W&W-AFCO had already made deliveries of certain straddle beams for Pier 3 Girder 4 and Pier 1 Girder 4.

57. This December 9, 2019 schedule and the schedule issued the next day both showed a completion date of December 30, 2019.

58. On December 23, 2019, Corman Kokosing wrote to reschedule the girder set for a December 30, 2019 delivery to January 9, 2020.

59. Ultimately, W&W-AFCO met the final January 9, 2019 delivery date and delivered all materials that day pursuant to the Purchase Order.

60. Because as of November 19, 2019, W&W-AFCO was ready, willing and able to meet all delivery dates, and the only adjustments made to the delivery schedule after that date were made by Corman Kokosing, Corman Kokosing is indisputably responsible for all delays to the Project associated with delivery and installation of the box girders from November 19, 2019 onward.

61. Additionally, W&W-AFCO cannot be held responsible for any delays prior to November 2019 because (1) the Purchase Order did not provide firm dates for delivery, (2) Corman Kokosing consented and agreed to later delivery dates and (3) the delivery schedule was affected by permitting delays that were beyond W&W-AFCO's control, and of which W&W-AFCO informed Corman Kokosing while the schedule was still being developed and agreed to by the parties.

62. Further, upon information and belief, none of W&W-AFCO's deliveries materially delayed the Project and/or did not affect the critical path of the Project.

**W&W-AFCO's Requests for Payment**

63. On January 10, 2020, W&W-AFCO provided an invoice in the amount of $914,390.68, representing the value of the materials delivered to the job site. A copy of the January 10, 2020 invoice is attached hereto as **Exhibit "4."**

64. As of that date, as provided by the January 10, 2020 invoice, W&W-AFCO had delivered to the Project site "100%" of all materials required by the Purchase Order. See Ex. 4.

65. On January 10, 2020, W&W-AFCO confirmed via telephone that Corman Kokosing had received the January 10, 2020 invoice.

66. Corman Kokosing failed to remit any payment within 30 days of the January 10, 2020 invoice.

67. Accordingly, Corman Kokosing failed to timely pay W&W-AFCO as forth in the Purchase Order. See Exhibit 1 § 3 (requiring payment "each month in the amount equal to 100% of the value of the materials delivered to the site").

68. On March 26, 2020, W&W-AFCO called to inquire why the final invoice had not been paid.

69. On March 31, 2020, a Corman Kokosing representative called W&W-AFCO and stated that payment was on hold pending back charges for delay, but did not provide the basis for the backcharge or a calculation.

70. Prior to this date, Corman Kokosing had not made W&W-AFCO aware of any back charges.

71. On May 28, 2020, W&W-AFCO called to follow up and inquire as to the status of the overdue amount owed by Corman Kokosing.

72. On June 25, 2020, W&W-AFCO followed up via email requesting that Corman Kokosing explain why it had failed to timely make payment under the Purchase Order and in response to the January 10, 2020 invoice.

**Corman Kokosing's Improper Withholding**

73. Corman Kokosing finally responded on July 28, 2020, when it sent a backcharge to W&W-AFCO and proposed change order to the Purchase Order in the amount of $689,981 for alleged costs that are not allowable under the Contract Documents.

74. W&W-AFCO disputed the backcharge. On December 14, 2020, W&W-AFCO provided a formal response disputing the invalid and attempted backcharge and demanding full payment of amounts owed to it within seven (7) days.

75. Corman Kokosing refused to pay the amounts demanded by W&W-AFCO, and failed to make timely payment without justification.

76. Corman Kokosing purported to support its improper backcharge with a spreadsheet asserting a claim for the following withholdings from amounts due to W&W-AFCO:

| 1. | Project Extended Costs | $169,791 |
| 2. | Equipment Costs | $242,689 |
| 3. | Liquidated Damages | $277,500 |
|    | **Total** | **$689,981** |

77. Among other bases, Corman Kokosing attempts to charge W&W-AFCO for labor, ranging from 17 days to 35 days, for 5 onsite supervisory employees at a cost of $62,279.50 plus a 10% overhead and profit (total of $68,507.45).

78. There is no basis for this assessment. These onsite supervising employees would have worked the same number of days regardless of any issues with Virginia's permit issuance,

11

and because, upon information and belief, none of W&W-AFCO's deliveries materially delayed the Project and/or did not affect the critical path of the Project.

79. Corman Kokosing also attempts to charge W&W-AFCO for consequential and incidental damages which include the cost of Transportation ($22,834.50); Subsistence ($36985.87); Field Office Trailer ($3,835.10); Utilities ($646.65); Field Office Incidentals ($1,996.50); Erosion Maintenance ($10,409.11); Maintenance of Traffic ($289.77); Construction Layout ($9,921.63); and Equipment Downtime ($242,689.49).

80. The headings for the items charged include:

   a. Supervision
   b. Supervisors' vehicles
   c. Hotels
   d. Per diem
   e. Field office trailer
   f. Internet for the office
   g. Ice and water for the office
   h. Trash pick-up for the office
   i. Toilets for the office
   j. Erosion and Maintenance. Labor & Equipment
   k. Maintenance of traffic and equipment
   l. Surveyor
   m. Small tools and equipment
   n. Crane and manlift equipment downtime
   o. Liquidated damages

81. The Additional Terms and Conditions of the Purchase Order exclude all of these consequential and incidental damages.

82. Moreover, these charges (1) are not reasonably related to the impact W&W-AFCO had on the schedule (which Corman Kokosing has failed and refused to substantiate), if any, (2) fail to account for the role other delays outside of W&W-AFCO's control played on the Project, and (3) otherwise reflect a failure by Corman Kokosing to mitigate its damages.

83. Significantly, W&W-AFCO requested that Corman Kokosing provide a factual basis as to how any of W&W-AFCO's deliveries impacted the Project schedule, but Corman Kokosing failed and/or refused to provide any explanation.

84. In assessing these delays against W&W-AFCO, Corman Kokosing referenced a schedule impact analysis that allegedly justified its assessment.

85. However, Corman Kokosing failed to provide W&W-AFCO with a copy of the schedule impact analysis.

86. Corman Kokosing assessed liquidated damages against W&W-AFCO at an apparent rate of $2,500 per day.

87. These liquidated damages rates do not appear anywhere in the Purchase Order between W&W-AFCO and Corman Kokosing, and, upon information and belief, they do not appear to be established in the version of the Contract Documents between Corman Kokosing and the Owner provided to W&W-AFCO. See Exhibit 2.

88. W&W-AFCO has requested that Corman Kokosing provide a full copy of the Contract Documents, but they have not been provided to date.

89. While W&W-AFCO disputes the assessment of any liquidated damages against it, the Contract Documents only purport to provide the Owner with the ability to assess no more than $600 per day in liquidated damages against Corman Kokosing. See Ex. 2, Section VI.

90. In assessing liquidated damages against W&W-AFCO, Corman Kokosing also attempts to make W&W-AFCO responsible for an excessive number of days, including for days when Corman Kokosing unilaterally pushed back delivery dates, and fails to acknowledge the delays caused by the state of Virginia outside the control of W&W-AFCO.

91. Corman Kokosing attempts to back charge W&W-AFCO liquidated damages for missing Substantial Completion by 55 days and Final Completion by 56 days ($277,500).

92. However, despite repeated demand by W&W-AFCO, Corman Kokosing has failed and refused to provide any evidence to show that the Owner assessed this number of days of liquidated damages against Corman Kokosing.

93. Additionally, despite repeated demand by W&W-AFCO, Corman Kokosing has failed and refused to provide any evidence to show that it paid this amount of liquidated damages assessed by the Owner.

**Corman Kokosing's Refusal to Pay W&W-AFCO**

94. W&W-AFCO timely performed its work under the Purchase Order by delivering all materials set forth therein.

95. On January 10, 2020, W&W-AFCO submitted its final payment application pursuant to work performed and materials supplied in accordance with the Purchase Order.

96. Despite repeated requests for payment, Corman Kokosing has not set forth any substantive or legitimate dispute regarding the $689,981 in contract balance/retainage held by Corman Kokosing and owed to W&W-AFCO.

97. Corman Kokosing assessed its backcharge on July 28, 2020, which W&W-AFCO rejected.

98. Payment has been due and owing since January 10, 2020.

99. Despite demands for payment, Corman Kokosing has not paid any of the amounts due and owing to W&W-AFCO.

100. Upon information and belief, Corman Kokosing was paid by the Owner for the unpaid portions of work performed by W&W-AFCO pursuant to the Purchase Order.

101. All conditions precedent to the initiation of this action by W&W-AFCO have occurred and have been performed, or have been waived by Corman Kokosing.

## COUNT I
## BREACH OF CONTRACT
## (W&W-AFCO v. Corman Kokosing)

102. W&W-AFCO hereby incorporates by reference the foregoing paragraphs as if fully set forth herein.

103. W&W-AFCO performed its contractual obligations on the Project in a timely and professional manner.

104. All conditions precedent to the receipt of payment have been satisfied or waived.

105. Corman Kokosing materially breached the Purchase Order by failing to timely pay W&W-AFCO for contract balance and/or retainage that is due to W&W-AFCO.

106. Corman Kokosing also breached its duty of good faith and fair dealing by (1) haphazardly shifting delivery dates without providing reasonable notice and (2) assessing liquidated damages and other costs against W&W-AFCO without a proper basis.

107. As a result of these material breaches, W&W-AFCO has suffered damages in the amount of $689,981.

WHEREFORE, W&W-AFCO respectfully requests that the Court enter judgment in its favor against Defendant Corman Kokosing, in an amount to be determined but no less than $689,981, plus pre and post-judgment interest, costs and attorneys' fees, and such further relief as the Court deems appropriate.

## COUNT II
## QUANTUM MERUIT / UNJUST ENRICHMENT
## (W&W-AFCO v. Corman Kokosing)
*Plead in the Alternative*

108. W&W-AFCO hereby incorporates the foregoing paragraphs as if fully set forth herein.

109. In performing work on the Project at the request and/or direction of Corman Kokosing, W&W-AFCO rendered valuable services and material goods to Corman Kokosing.

110. Corman Kokosing accepted and/or enjoyed the services and material goods provided by W&W-AFCO for Corman Kokosing.

111. W&W-AFCO rendered the services and material goods under such circumstances that Corman Kokosing reasonably knew that W&W-AFCO expected to be compensated for such services.

112. Corman Kokosing's acceptance of these services and material goods without payment to W&W-AFCO is inequitable.

113. The reasonable value of the services and material goods provided by W&W-AFCO is an amount not less than $689,981.

WHEREFORE, W&W-AFCO respectfully requests that the Court enter judgment in its favor against Defendant Corman Kokosing, in an amount to be determined but no less than $689,981, plus pre and post-judgment interest, costs and attorneys' fees, and such further relief as the Court deems appropriate.

## COUNT III
## BREACH OF PROMPT PAYMENT ACT
## (W&W-AFCO v. Corman Kokosing)

114. W&W-AFCO hereby incorporates the foregoing paragraphs as if fully set forth herein.

115. The Purchase Order between Corman Kokosing and W&W-AFCO is subject to the Virginia Public Procurement Act, including but not limited to the Virginia Prompt Payment Act, Section 2.2-4347 et seq. of the Virginia Code.

116. Upon information and belief, Corman Kokosing has received payment from the Project owner for work performed by W&W-AFCO that Corman Kokosing has not paid to W&W-AFCO.

117. Pursuant to Section 2.2-4354 of the Virginia Prompt Payment Act, within seven (7) days of receipt of amounts paid to Corman Kokosing for work performed by W&W-AFCO, Corman Kokosing was required to notify the Owner and W&W-AFCO, in writing, of Corman Kokosing's intention to withhold all or part of W&W-AFCO's payment with the reason for non-payment.

118. Corman Kokosing has not timely furnished such written notice to W&W-AFCO.

119. As a result of Corman Kokosing's failure to comply with the Virginia Prompt Payment Act, Section 2.2-4347 et seq. of the Virginia Code, W&W-AFCO is entitled to interest at the rate of one percent (1%) per month.

WHEREFORE, W&W-AFCO respectfully requests that the Court enter judgment in its favor against Defendant Corman Kokosing, in an amount to be determined but no less than $689,981, plus pre and post-judgment interest, including but not limited to Virginia Prompt Payment Act interest at one percent (1%) per month, costs and attorneys' fees, and such further relief as the Court deems appropriate.

**PLAINTIFF HEREBY REQUESTS A JURY FOR ALL ISSUES SO TRIABLE**

Dated: December 9, 2021            Respectfully submitted,

                                                  COHEN, SEGLIAS, PALLAS, GREENHALL
                                                   & FURMAN, P.C.

*/s/ Jackson S. Nichols*
Jackson S. Nichols, Esq. (VSB #87225)
900 Seventh Street NW, Suite 725
Washington, D.C. 20001
(202) 466-4110 – Telephone
(202) 380-0531 – Facsimile
jnichols@cohenseglias.com

Roy S. Cohen, Esq.
*Pro Hac Vice to be filed*
1600 Market Street, 32nd Floor
Philadelphia, PA 19103
(215) 564-1700 – Telephone
(267) 238-4436 – Facsimile
rcohen@cohenseglias.com

*Counsel for Plaintiff, W&W Steel, Inc.*